**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


J & J SPORTS PRODUCTIONS, INC.,   )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        1:11CV754
                                  )
OSCAR MARTINEZ, TAVIER ADOLFO     )
MEDINA, and LA HACIENDA, INC.,    )
                                  )
        Defendants.               )


<u>**MEMORANDUM OPINION, ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

The instant matter comes before the undersigned United States Magistrate Judge on Defendant Javier Adolfo Medina's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6) (Docket Entry 21),[1] Defendant Medina's Motion to Vacate the Entry of Default pursuant to Fed. R. Civ. P. 55(c) (Docket Entry 26), and Plaintiff's Motion for Default Judgment by the Court (Docket Entry 32). (<u>See</u> Docket Entries dated Jan. 16, 2013, and Mar. 4, 2013.)[2] For the reasons that follow, the

---

[1]    Defendant Medina indicated that "[t]he case caption and [C]omplaint improperly identified [Defendant] Medina as 'Tavier Adolfo Medina.' The correct spelling of his name is Javier Adolfo Medina." (Docket Entry 21 at 1 n.1.)

[2]    The entry of default (and thus the decision to set aside or to leave in effect such an entry) constitutes a pretrial matter that does not dispose of any claim or defense; as a result, courts have treated motions of this sort as subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A). <u>See, e.g.</u>, <u>Bailey v. United Airlines</u>, 279 F.3d 194, 204 (3d Cir. 2002); <u>L & M Cos., Inc. v. Biggers III Produce, Inc.</u>, No. 3:08CV309-RJC-DCK, 2010 WL 1439411, at *8 & n.3 (W.D.N.C. Apr. 9, 2010) (unpublished). Under these circumstances, the undersigned Magistrate Judge will enter an

undersigned will grant Defendant Medina's Motion to Vacate the Entry of Default and will treat Defendant Medina's Motion to Dismiss as timely filed as of the effective date of this Order. Furthermore, the Court should grant Plaintiff's Motion for Default Judgment by entering judgment against Defendant La Hacienda, Inc. in the amount of $9,812.50.

## I.  BACKGROUND

Plaintiff, a corporation based in Campbell, California, brought the instant action against Defendants Medina and Oscar Martinez individually, and, along with Defendant La Hacienda, Inc., as owners and/or operators of La Hacienda, a commercial establishment located in Chapel Hill, North Carolina. (Docket Entry 1, ¶¶ 5-9.)[3] According to the Complaint, Plaintiff had exclusive nationwide distribution rights to the program "Number One": Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program ("the Program"), airing on September 19, 2009. (Id. ¶ 11.) The Complaint further alleges that Defendants intercepted the Program and exhibited it at their establishment without

_____

order rather than a recommendation on the instant Motion to Vacate the Entry of Default.  By contrast, "[a] motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act." Baltimore Line Handling Co. v. Trophy, 771 F. Supp. 2d 531, 534 (D. Md. 2011).  Further, because the instant Motion to Dismiss is not ripe for a recommendation on the merits, as discussed below, the undersigned addresses it by order for procedural purposes only.

[3]    Plaintiff voluntarily dismissed all claims against Defendant Fabiola Sherman.  (Docket Entry 11.)

authorization from Plaintiff.  (Id. ¶ 14.)  Based on these allegations, the Complaint seeks relief under 47 U.S.C. §§ 553 and 605 (the "Cable Act"), as well as for conversion under North Carolina law.  (See id. ¶¶ 10-27.)

On December 5, 2011, Plaintiff filed a Motion for Entry of Default (Docket Entry 9) against Defendant La Hacienda, Inc. "on the grounds that [La Hacienda, Inc.] have [sic] failed to appear or otherwise respond to the Summons and Complaint within the time prescribed by the Federal Rules of Civil Procedure" (id. at 1). The Clerk of Court entered default against Defendant La Hacienda, Inc. on December 6, 2011.  (Docket Entry 10.)  On November 15, 2012, Plaintiff filed a Motion for Entry of Default (Docket Entry 19) against Defendant Medina on similar grounds (id. at 1).  The Clerk of Court entered default against Defendant Medina on November 16, 2012.  (Docket Entry 20.)

Defendant Medina filed the instant Motion to Dismiss (Docket Entry 21) on December 4, 2012, and he filed the instant Motion to Vacate (Docket Entry 26) on December 7, 2012.  Plaintiff responded to each Motion (Docket Entries 30 and 31, respectively), to which Defendant Medina replied (Docket Entries 35 and 36, respectively). Plaintiff filed the instant Motion for Default Judgment (Docket Entry 32) solely against Defendant La Hacienda, Inc., which failed to respond (see Docket Entries dated Jan. 9, 2013, to present).

-3-

## II.  MOTION TO VACATE ENTRY OF DEFAULT

The Federal Rules of Civil Procedure provide that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c).  The United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to make this determination as follows:

> When deciding whether to set aside an entry of default, a district court should consider [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic.

Payne v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006).  The Court must liberally construe Rule 55(c) "to provide relief from the onerous consequences of defaults and default judgments," Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) (internal quotation marks omitted), because the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," Colleton Prep. Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010).

### 1.  Meritorious Defense

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party . . . ." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); see also United States v. Moradi, 673 F.2d

-4-

725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which if believed would permit either the Court or the jury to find for the defaulting party."); Maryland Nat'l Bank v. M/V Tanicorp I, 796 F. Supp. 188, 190 (D. Md. 1992) ("The mere assertion of a meritorious defense is not enough, Defendant must state the underlying facts to support the defense.").

Defendant Medina states that "Plaintiff seeks to hold [him] liable based on his purported ownership interest in La Hacienda, Inc.[] However, [Defendant] Medina is not currently an owner of La Hacienda. In fact, [Defendant] Medina sold his entire share of the Corporation to Defendant Oscar Martinez in May 1999, more than *ten years* prior to the occurrence of the alleged events that form the basis of Plaintiff's claims." (Docket Entry 27 at 4 (emphasis in original).) Therefore, Defendant Medina argues, "Plaintiff cannot hold [him], a former shareholder, liable for acts of the Corporation, which allegedly took place years after he sold his share." (Id. at 4-5.) Defendant Medina further asserts that "Plaintiff has failed to plead any facts showing how [Defendant] Medina could face personal liability in this action" (id. at 5) and that "Plaintiff did not serve [Defendant] Medina until more than more than [sic] two months after the expiration of the Court's deadline for service and more than *one year* after it filed the Complaint" (id. (emphasis in original)).

-5-

Plaintiff does not refute Defendant Medina's first argument, except to say that his Motion to Dismiss, to which Defendant Medina directs the Court for further details concerning his ownership interest (or lack thereof) in La Hacienda, Inc., is not properly before the Court. (Docket Entry 31 at 4.) Similarly, Plaintiff does not directly address the timeliness of its service (see id. at 4-6) or Defendant Medina's attacks on the sufficiency of the Complaint (id. at 4).

Defendant Medina has asserted a meritorious defense. In order to hold an individual liable under the Cable Act, "[the] plaintiff must show that the individual defendant authorized the violations set forth in the complaint." J & J Sports Prods., Inc. v. Benson, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (unpublished) (internal quotation marks omitted). Defendant Medina stated in a declaration that, since he sold his share of La Hacienda, Inc. in 1999, he has "had no involvement in the management, supervision or operation of La Hacienda." (Docket Entry 23, ¶ 2.) If true, these facts would appear to foreclose individual liability by Defendant Medina for the alleged violation. Furthermore, Defendant Medina has indicated that Plaintiff served him with the Summons and Complaint more than two months after the deadline set by the Court had passed. (Docket Entry 27 at 5.) This factor thus weighs in favor of setting aside the entry of default.

-6-

## 2.  Reasonable Promptness

"Whether a party has taken 'reasonably prompt' action, of course, must be gauged in light of the facts and circumstances of each occasion . . . ."  <u>Moradi</u>, 673 F.2d at 727.  Defendant Medina filed his motion to set aside the entry of default on December 7, 2012, less than two months after service of the Complaint and 21 days after the Clerk entered a default.  (<u>See</u> Docket Entries 18, 20, 26.)  Other courts in this Circuit have weighed this factor in favor of the defaulting party where the defaulting party waited longer to move to set aside the default.  <u>See, e.g.</u>, <u>Vick v. Wong</u>, 263 F.R.D. 325, 330 (E.D. Va. 2009) (finding that reasonable promptness factor weighed in favor of setting aside default where moving party did not respond for more than two months after clerk entered default, but did respond a few weeks after plaintiff filed motion for entry of default judgment); <u>Wainwright's Vacations, LLC v. Pan Am. Airways Corp.</u>, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (concluding that moving party acted with reasonable promptness by making motion to vacate default slightly more than a month after entry of default).  Furthermore, Plaintiff concedes that this factor likely weighs in favor of Defendant Medina.  (<u>See</u> Docket Entry 31 at 5.)  Under these circumstances, the second factor supports setting aside the entry of default.

-7-

## 3.  Personal Responsibility

Defendant Medina argues that he "never received a copy of the Summons and Complaint and did not become aware of the deadline for a response until he received notice of the motion for entry of default." (Docket Entry 27 at 7; <u>see also</u> Docket Entry 28, ¶¶ 2-4.)  Further, Defendant Medina contends, and supports by affidavit, that "his granddaughter (who purportedly was served by the process server) has no recollection of receiving a copy of the Summons and Complaint and never provided any such documents to [Defendant] Medina." (Docket Entry 27 at 7; <u>see also</u> Docket Entry 29, ¶¶ 3-4.)

The Proof of Service, which indicates that the process server served the Summons on Defendant Medina's granddaughter (Docket Entry 18 at 1), establishes a prima facie showing of proper service under North Carolina law.  <u>See</u> <u>Crabtree v. City of Durham</u>, 136 N.C. App. 816, 818, 526 S.E.2d 503, 505 (2000) ("When [a] return of service on its face shows legal service by an authorized officer, that return is sufficient, at least *prima facie*, to show service in fact.").  "The *prima facie* evidence established by a valid return of service may be rebutted only by producing affidavits of *more than one* person showing *unequivocally* that proper service was *not* made upon the person stated in the return of service." <u>Id.</u> (citing <u>Grimsley v. Nelson</u>, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996) (italics provided by <u>Crabtree</u>)).

-8-

The affidavits of Defendant Medina and his granddaughter rebut Plaintiff's prima facie evidence of proper service. (See Docket Entry 28, ¶¶ 2-4; Docket Entry 29, ¶¶ 3-4.) The Court therefore cannot determine whether Defendant bears responsibility for the entry of default. See, e.g., Turpin v. Wellpoint Cos., Inc., No. 3:10CV850-HEH, 2011 WL 1086482, at *2 (E.D. Va. Mar. 23, 2011) (unpublished) (recognizing that "personal responsibility" factor can turn on whether proper service occurred). This factor thus does not weigh in favor of or against setting aside the entry of default.

### 4. Prejudice

The Fourth Circuit has found prejudice lacking under the following circumstances:

> There was no missing witness in the case whose testimony was made unavailable by the delay; there was similarly no dead witness; neither were there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay. . . . So the record shows without contradiction that the plaintiff suffered no prejudice on account of the delay.

Lolatchy, 816 F.2d at 952-53. Defendant Medina argues that "[e]ach of these factors is present here and there would be no prejudice to Plaintiff in vacating the entry of default." (Docket Entry 27 at 7-8.) Plaintiff, on the other hand, contends that "[Defendant Medina's] actions, including his disregard for properly effectuated service, indicates that there will be increased difficulties in discovery." (Docket Entry 31 at 7.) However, the prejudice

-9-

Plaintiff asserts is purely speculative and unrelated to any delay by Defendant Medina in responding to the Complaint. Thus, this factor weighs in favor of setting aside the entry of default.

### 5. History of Dilatory Action

This case is in an early stage of litigation and, separate from the delayed response to the Complaint, the record does not reflect evidence of dilatory conduct by Defendant Medina. This factor therefore favors setting aside the entry of default.

### 6. Less Drastic Sanctions

Defendant Medina contends that "the Court can certainly consider various other less drastic sanctions. . . . Accordingly, this factor weighs in favor of vacating the entry of default." (Docket Entry 27 at 9.) Plaintiff, in turn, requests that, "to the extent the Court is inclined to set aside the default, . . . it be permitted to submit its costs and attorneys' fees related to obtaining the default and defending against Defendant's Motion to Set Aside." (Docket Entry 31 at 8.) The Parties therefore apparently agree that sanctions less drastic than default exist and thus this factor weighs in favor of setting aside default.[4]

In sum, factors one, two, four, five and six identified by the Fourth Circuit in Payne support setting aside the entry of default and factor three does not weigh in favor of or against so doing.

_____

[4] Given the conflict in the evidence regarding service, the Court declines to order any cost-shifting at this time.

-10-

Furthermore, the Fourth Circuit has stated a strong preference that "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Prep. Acad., 616 F.3d at 417. Under these circumstances, good cause exists to set aside the entry of default as to Defendant Medina.

### III.  MOTION TO DISMISS

Federal Rule of Civil Procedure 55(a) states that, "[when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." "The general effect of the entry of default under Rule 55(a) is that the defaulting party loses his standing in court, his right to receive notice of the proceedings, and his right to present evidence at the final hearing." Hartford Fire Ins. Co. v. Sundeck Transp. Grp., Inc., No. 2:10cv191, 2011 WL 2938466, at *2 (E.D. Va. June 29, 2011) (unpublished) (citing Clifton v. Tomb, 21 F.2d 893, 897 (4th Cir. 1927)); see also Transamerica Life Ins. Co. v. Shubin, 2012 WL 5364645, at *2 (E.D. Cal. Oct. 31, 2012) (unpublished) (holding court could not consider stipulation of defendants in default); Kiesgen v. St. Clair Marine Salvage, Inc., 724 F. Supp. 2d 721, 728 (E.D. Mich. 2010) (striking defendant's third party complaint because defendant filed it after default). Defendant Medina therefore did not have standing to file his instant Motion to Dismiss (Docket Entry 21), given the entry of

-11-

default in place at the time (see Docket Entry 20).  However, in light of the Court's disposition of Defendant Medina's instant Motion to Vacate the Entry of Default, the Court will treat his instant Motion to Dismiss as timely filed as of the date of this Order.

### IV.  MOTION FOR DEFAULT JUDGMENT BY THE COURT

Plaintiff next seeks a default judgment against Defendant La Hacienda, Inc. (Docket Entry 32.)  Federal Rule of Civil Procedure 55 provides for the entry of a default judgment against a party that has failed to plead or defend against a claim for affirmative relief.  "For a default judgment, well-pleaded factual allegations are sufficient to establish a defendant's liability." Joe Hand Promotions, Inc. v. Coaches Sports Bar, 812 F. Supp. 2d 702, 703 (E.D.N.C. 2011) (citing Fed. R. Civ. P. 55(a) and Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)).  "The defaulting defendant is not, however, held to admit conclusions of law.  Further, 'the allegations of the complaint regarding the amount of damages suffered are not controlling.'"  J & J Sports Prods., Inc. v. Segura, No. 5:12-CV-241-FL, 2013 WL 1498963, at *1 (E.D.N.C. Apr. 10, 2013) (unpublished) (quoting Coaches Sports Bar, 812 F. Supp. 2d at 703) (internal citation omitted).

As an initial matter, Plaintiff has presented prima facie evidence that Defendant La Hacienda, Inc. was properly served with a copy of the Complaint and Summons.  The Summons lists Peter

-12-

Cabrera as the Registered Agent for Defendant La Hacienda, Inc. (Docket Entry 3-3 at 1.) The executed Proof of Service indicates that the process server in fact served Peter Cabrera. (Docket Entry 8 at 1.) As discussed in Section II.3., the Proof of Service establishes a prima facie showing of proper service under North Carolina law. See Crabtree, 136 N.C. App. at 818. Defendant La Hacienda, Inc. has not rebutted this presumption. Thus, Plaintiff properly served Defendant La Hacienda, Inc.

The Complaint alleges that Defendant La Hacienda, Inc. violated 47 U.S.C. § 533 (see Docket Entry 1, ¶¶ 19-23), which "prohibits unauthorized interception or reception of cable in communication services," Sequra, 2013 WL 1498963, at *2, and 47 U.S.C. § 605 (see Docket Entry 1, ¶¶ 10-18), which "prohibits unauthorized individuals from intercepting radio communication and divulging or publishing the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person," Sequra, 2013 WL 1498963, at *2 (internal quotation marks omitted). The factual allegations in the Complaint establish that Defendant La Hacienda, Inc. violated the Cable Act.

Specifically, the Complaint alleges that Plaintiff obtained exclusive distribution rights to the Program (Docket Entry 1, ¶ 11), that it granted various commercial entities the rights to exhibit the Program publicly (id. ¶ 12), and that it expended significant monies to do so (id. ¶ 13). It further asserts that

Defendant La Hacienda, Inc. exhibited the Program publicly without Plaintiff's permission. (Id. ¶ 14.) Plaintiff further provides uncontested affidavits in support of its Complaint which aver that: (1) Plaintiff bought the rights to the Program (Docket Entry 32-3, ¶ 3); (2) no individual or organization licensed the Program from Plaintiff for exhibition at Defendant La Hacienda, Inc.'s establishment (id. ¶ 7); (3) the Program was exhibited at La Hacienda (Docket Entry 32-2 at 1); and (4) there exist various means by which an individual can gain access to the Program illicitly, either via cable or satellite connections, none of which likely would occur mistakenly or accidentally (Docket Entry 32-3, ¶ 9). Based on these facts, Defendant La Hacienda Inc. violated the Cable Act. See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996); see also Segura, 2013 WL 1498963, at *2 ("Where plaintiff's private investigator informs that he was at defendant's establishment on the date the program aired, and where plaintiff's owner affirms in affidavit that defendant did not contract with plaintiff to display the program and that such program could not be 'innocently' intercepted, the well-pleaded facts establish that defendant violated section 553, section 605, or both.").[5]

_____

[5]    "Section[s] 553 and 605 contain common elements in so far as liability is concerned, and therefore, it is not fatal that [P]laintiff does not have evidence of exactly how its signal was intercepted." J & J Sports Prods., Inc. v. Centro Celvesera La Zaona, LLC, No. 5:11-CV-00069-BR, 2011 WL 5191576, at *2 n.1

"Both § 553 and § 605 allow plaintiff to elect to recover either actual damages and lost profits or statutory damages." Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999). Plaintiff in the instant case has opted for statutory damages. (See Docket Entry 33 at 1.) "Where a defendant is liable under both § 553 and § 605, a plaintiff is entitled to have damages awarded under 605 which provides for greater recovery." Googies Luncheonette, 77 F. Supp. 2d at 489; see also Segura, 2013 WL 1498963, at *3 ("Although plaintiff has demonstrated defendant's violation of section 553 or 605, recovery under both sections is improper. . . . Plaintiff, on motion for default judgment, requests damages under only section 605. Other courts in this district have proceeded under section 605 when it is not possible to conclude whether section 605 or section 553 has been violated." (internal citations omitted)). Section 605 provides for statutory damages of not less than $1,000 and not more than $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

It further leaves the determination of damages within that range to the discretion of the Court. See id. ("[T]he party

(E.D.N.C. Nov. 1, 2011) (unpublished). The fact that Defendant La Hacienda, Inc.'s default impeded Plaintiff's ability to obtain evidence on this point provides further grounds for reaching this conclusion. See, e.g., Segura, 2013 WL 1498963, at *2; Joe Hand Prod., Inc. v. Behari, No. 2:12-cv-1522 KJM AC, 2013 WL 1129311, at *4 (E.D. Cal. Mar. 18, 2013) (unpublished).

aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, <u>as the court considers just</u> . . . ." (emphasis added)); <u>see also</u> <u>J & J Sports Prods., Inc. v. Lara Sport House Corp.</u>, No. 1:10-cv-01369 (TSE/IDD), 2011 WL 4345114, at *5 (E.D. Va. Aug. 26, 2011) (unpublished) ("In determining the amount of damages that can be imposed for each violation, § 605 leaves the decision within the sound discretion of the court."). Our neighboring court to the east has observed that:

> Courts in this circuit have used two approaches to exercising their discretion in awarding damages. The first approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. The second approach is to award a flat sum per violation.

<u>Coaches Sports Bar</u>, 812 F. Supp. 2d at 704 (internal citations omitted).

Plaintiff points out that "this action would not have been brought had [] Defendant paid Plaintiff the $2,200.00 fee applicable to their 100-person capacity establishment." (Docket Entry 33 at 11; <u>see also</u> Docket Entry 32-3 at 10 (showing license rate by capacity); Docket Entry 32-2 at 1 (noting capacity of La Hacienda "is approximately 100 people").) Plaintiff therefore contends that "this fee should establish the very minimum base amount from which this Court should calculate damages in this

-16-

action." (Docket Entry 33 at 11.) It goes on to argue that, as a
result of exhibiting the Program, Defendant likely gained "good
will" from the patrons who viewed the Program at La Hacienda rather
than at a licensed establishment (id.) and that those patrons
likely would frequent La Hacienda again, further harming other
licensed establishments (id. at 11-12). Plaintiff also emphasizes
the need for greater damages as a deterrent to Defendant and to
others who would seek to intercept similar programs. (Id. at 12-
16.) Plaintiff therefore asks for the maximum statutory award.
(Id. at 16.)

Plaintiff's investigator averred that he counted 37 patrons in
La Hacienda at the time of the Program. (Docket Entry 32-2 at 1.)
Courts that use the first approach identified in Coaches Sports Bar
to calculate the statutory award (i.e., multiplying the number of
patrons present or the capacity by a certain amount) typically use
a multiplier that represents the fee a patron would have paid had
he or she bought the telecast from home. See Benson, 2007 WL
951872, at *5 ("In cases where there is uncontradicted evidence of
the number of patrons viewing the match in an establishment, courts
have used the first approach and multiplied the number of patrons
by a set sum, plus any cover charges or other profits attributable
to the unauthorized viewing. This is based on the theory that the
patrons who watched the unauthorized broadcast would have ordered
it individually for residential use." (internal citations

-17-

omitted)); see also Googies Luncheonette, 77 F. Supp. 2d at 490 (multiplying number of patrons present by $50 because plaintiff "charged residential customers approximately $50 to view the match"). In the instant case, Plaintiff asserts that "[t]here is no applicable per-person rate for the Program . . . ." (Docket Entry 33 at 11.) However, a court addressing a licensing disagreement that involved the same Plaintiff and the same Program as in the instant case determined that "[a]n award of $54.95 per patron, the 'typical' purchase price for a pay-per-view broadcast of this nature," was appropriate. J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010) (unpublished) (quoting J & J Sports Prods., Inc. v. Arhin, No. 07 CV 2875(SJ), 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009) (unpublished)). Another court reviewing a case involving the same Plaintiff and the same Program took note of the $2,200 licensing fee the establishment in question would have had to pay and, without discussing the rationale, awarded statutory damages in the flat amount of $6,000, indicating such amount, "when combined with enhanced damages and attorneys' fees . . . is a fair reflection of actual damages." J & J Sports Prods., Inc. v. El Molcajete, Inc., No. 7:11-cv-2435-TMC, 2012 WL 366519, at *4 (D.S.C. Jan. 18, 2012) (unpublished).

In the instant case, using a "typical" per person fee of $54.95 multiplied by 37 (the number of patrons observed in the

-18-

establishment at the time of the Program's broadcast (see Docket Entry 32-2 at 1)) would result in a statutory award of $2,033.15. However, because an award in this amount would not cover the $2,200 licensing fee Plaintiff lost, the Court should adopt another measure for statutory damages. See EMI April Music Inc. v. Rodriguez, 691 F. Supp. 2d 632, 636 (M.D.N.C. 2010) (Schroeder, J.) ("At a minimum, it should cost no less to violate the statute than to comply with it."). Plaintiff has presented evidence that it suffered $2,200 in damages and has asserted that this figure "should establish the very minimum base amount from which this Court should calculate damages in this action" (Docket Entry 33 at 11). Plaintiff claims no other actual damages, aside from costs and attorneys' fees, but rather points to speculative harm to Defendant La Hacienda Inc.'s competitors and the need for deterrence of future violations (see id. at 11-16), arguments better suited to the determination of enhanced damages. Under these circumstances, the Court should adopt $2,200 as the base statutory damages in this case. See J & J Sports Prods., Inc. v. Tejada, No. 3:12-CV-467-RJC-DCK, 2013 WL 171598, at *3 (W.D.N.C. Jan. 16, 2013) (unpublished) (finding plaintiff entitled to statutory damages equal to program fee charged to establishments of defendant's size where, "[a]side from costs and attorneys' fees, Plaintiff's only actual damages claims are the [program fee]").

-19-

"In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). "In determining whether the [d]efendant['s] conduct was willful and enhanced damages are justified, courts typically consider certain factors, including (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks." J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc., No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010) (unpublished) (citing J & J Sports Productions, Inc. v. Guzman, 553 F. Supp. 2d 195, 199 (E.D.N.Y. 2008)).

Plaintiff's Complaint and the evidence presented in support of its instant Motion establish that Defendant La Hacienda Inc. acted willfully. "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." Googies Luncheonette, 77 F. Supp. 2d at 490; see also Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) ("In order . . . to receive the closed-circuit broadcast, [the defendant] had to have engaged in some deliberate

-20-

act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission."). Furthermore, "[i]t is clear that [the] violation, taking place in a commercial establishment rather than a residence, was committed for purposes of direct or indirect commercial advantage . . . ." Tejada, 2013 WL 171598, at *4. However, Plaintiff has presented no evidence of any of the other above-listed aggravating conduct. Notably, Plaintiff's investigator was not charged a cover fee. (Docket Entry 32-2 at 1.)

Nevertheless, the undersigned recognizes the need to deter such willful activity in the future, a goal that the base statutory damages award would not necessarily accomplish. See Kingvision Pay-Per-View, Ltd. v. Las Reynas, No. 4:07-CV-67-D, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007) (unpublished) ("[C]ourts focus in the aggregate on finding a statutory damages amount that reasonably compensates the victim and is 'substantial enough to help deter future violations.'" (quoting Joe Hand Promotions, Inc. v. Phillips, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at *4 (S.D.N.Y. Jul. 16, 2007) (unpublished))); cf. Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411(DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006) (unpublished) ("[A]lthough the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business."). "[I]t appears that courts have awarded anywhere from

-21-

three to six times the statutory damages award for enhanced damages . . . ." J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2; see also J & J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008) (same); but see Welch, 2010 WL 4683744, at *5 (awarding enhanced damages in an amount twice that of base statutory award); Las Reynas, 2007 WL 2700008, at *3 (same). Given the lack of aggravating factors in the instant case, the Court should award enhanced damages in the amount of $6,600, three times that of the base statutory damages award. See J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2 (awarding enhanced damages three times greater than base statutory damages where no aggravating factors existed); Benson, 2007 WL 951872, at *5 (same).[6]

---

[6]    Plaintiff's Complaint also alleges a state law conversion claim against all Defendants. (See Docket Entry 1, ¶¶ 24-27.) To the extent Plaintiff requests this award in addition to the award under § 605, which already significantly exceeds the requested conversion award, it would "result in a double recovery, and [the Court], therefore, [should] den[y] . . . recovery for the tort of conversion." J.R.'Z Neighborhood Sports Grille, 2010 WL 1838432, at *2. Furthermore, North Carolina law does not recognize a claim for conversion as to intangible property such as satellite or other transmission signals. See J & J Sports Prods., Inc. v. Santillan, No. 1:11CV1141, 2012 WL 6738316, at *4-5 (M.D.N.C. Dec. 28, 2012) (unpublished), recommendation adopted, 2013 WL 179949 (Jan. 17, 2013) (Schroeder, J.); see also Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) ("In North Carolina, only goods and personal property are properly the subjects of a claim for conversion. A claim for conversion does not apply to real property. Nor are intangible interests such as business opportunities and expectancy interests subject to a conversion claim." (internal citations omitted)).

Finally, Plaintiff requests attorneys' fees and costs associated with the instant case (see Docket Entry 33 at 20) and the Cable Act provides for such recovery, 47 U.S.C. § 605(e)(3)(B)(iii). "In determining a reasonable attorney's fee, the 'most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.'" Welch, 2010 WL 4683744, at *5 (quoting Henley v. Eckerhart, 461 U.S. 424, 433 (1983)). Plaintiff provided an affidavit from counsel outlining fees in the amount of $1012.50, which represents 4.5 hours of work at a rate of $225/hour. (Docket Entry 32-1, ¶¶ 8-10.) This amount is reasonable. See Tejada, 2013 WL 171598, at *4 (finding same rate and number of hours reasonable in similar case).

## V. CONCLUSION

The relevant factors weigh in favor of setting aside the entry of default against Defendant Medina; however, Defendant Medina filed his Motion to Dismiss at a time when he did not have standing to do so. Finally, Plaintiff has satisfied the requirements for a default judgment against Defendant La Hacienda, Inc.

**IT IS THEREFORE ORDERED** that Defendant Javier Medina's Motion to Vacate the Entry of Default (Docket Entry 26) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Medina's Motion to Dismiss (Docket Entry 21) is deemed timely filed as of May 16, 2013. Plaintiff shall file any response by June 10, 2013.

-23-

**IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment by the Court (Docket Entry 32) be granted in part, in that judgment should be entered against Defendant La Hacienda, Inc. for violation of the Cable Act in the total amount of $9,812.50, which includes $2,200.00 in statutory damages, $6,600.00 in enhanced damages, and $1,012.50 in costs and attorneys' fees.


/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 16, 2013